**In re John WOODS, Debtor.**

**ITT FINANCIAL SERVICES, Plaintiff,**

v.

**John WOODS, Defendant.**

**Bankruptcy No. 85–01097K.**
**Adv. No. 85–0614K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 19, 1987.

Simon Jeffrey Rosen, Larry S. Eisman, Philadelphia, Pa., for plaintiff.

Michael A. Cibik, John F. Gehring, Philadelphia, Pa., for debtor.

William Schaps, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Presently under consideration is the Motion of the Plaintiff-Creditor, ITT FINANCIAL SERVICES (hereinafter referred to as "ITT"), for Reconsideration of that portion of our Opinion and Order of November 13, 1986, holding that the Debtor-Defendant, John Woods (hereinafter referred to as "the Debtor"), is entitled to costs and reasonable attorney's fees pursuant to 11 U.S.C. § 523(d). See *In re Woods*, 66 B.R. 984, 991 (Bankr.E.D.Pa.1986). We had previously entered judgment in favor of the Debtor upon ITT's Complaint Objecting to the dischargeability of ITT's debt under 11 U.S.C. §§ 523(a)(2)(A), (B), and (C). The merits of that decision are not questioned in this Motion. Also under consideration is the Debtor's Motion for Attorneys Fees and Costs in the amount of $1,440.75[1] which was filed in the same pleading in which the Debtor answered ITT's Motion for Reconsideration. Oral argument was heard on December 18, 1986, and both parties were accorded an opportunity to submit Briefs on or before January 15, 1987.

The operative section of the Bankruptcy Code, 11 U.S.C. § 523(d) provides that:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

ITT asserts the following as the basis for the conclusion urged in its Motion that its position was "substantially justified" and that "special circumstances" existed here which would render a fee award against it "unjust:"

Defendant filed his bankruptcy petition only eighteen days after borrowing funds from plaintiff, and in fact saw his attorney ten days after borrowing said funds;

Plaintiff's witness swore, under oath, that she received false pay stubs from defendant;

Defendant concealed his chronic illness from plaintiff, justifying an exception to discharge;

Plaintiff's position that the obligation was open-end credit was reasonable and justified, in light of the definition provided by the Code, coupled with interpretation of case law;

Defendant's own pleadings and interrogatory answers were inconsistent, contradictory, and gave rise to the inference of non-dischargeability.

The language and spirit of § 523(d) codifies a policy of discouraging creditors from objecting to the dischargeability of consumer debts in marginal cases, or where substantial justification does not exist. As noted by Collier, the threat of litigation and the expenses thereof are often enough to coerce a debtor to settle or make payment in a reduced amount where otherwise the debt would otherwise simply be discharged. 3 COLLIER ON BANKRUPTCY ¶ 523.12, at 523–69 to 523–70 (15th ed. 1986). We note that debtors are frequently unable to afford counsel to defend such cases, and, therefore, it is important that debtors'

counsel for services not rendered in connection with the dischargeability Complaint.

---

1. The Debtor originally requested $1,640.75, but later conceded that his itemized fee request included $200.00 which the Debtor had owed to

counsel receive some monetary incentive to do so.

It should be noted that the language in this section concerning "substantial justification" and "special circumstances" mirrors the language found in 28 U.S.C. § 2412, known as the "Equal Access to Justice Act" (hereinafter referred to as "EAJA"). In fact, the legislative history of a language change in § 523(d), which was implemented by the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (BAFJA),[2] clearly states that it was intended to incorporate the standard for award of attorney's fees contained in the EAJA. H.R.Rep. No. 98–65, 98th Cong., 1st Sess. 9 (1983).

Since the Third Circuit Court of Appeals has spoken many times on the subject of the applicable standards under the EAJA,[3] it will obviously be helpful to look at these cases. *See, e.g., Brinker v. Guiffrida,* 798 F.2d 661 (3d Cir.1986); *Washington v. Heckler,* 756 F.2d 959 (3d Cir.1985); *Dennis v. Heckler,* 756 F.2d 971 (3d Cir.1985); *Tressler v. Heckler,* 748 F.2d 146 (3d Cir. 1984); *Dougherty v. Lehman,* 711 F.2d 555 (3d Cir.1983); and *National Resources Defense Council, Inc. v. EPA,* 703 F.2d 700 (3d Cir.1983). It is well-established in this Circuit that "substantial justification 'constitute[s] a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous.' *Dougherty,* 711 F.2d at 563. *See also Natural Resources Defense Council,* 703 F.2d at 711 (opinion announcing the judgment of the Court); *id.* at 714–15 (concurring opinion); *id.* at 719 (concurring and dissenting opinion)." *Washington,* 756 F.2d at 961. Moreover, the burden of proving substantial justification is on the government. *Brinker,* 798 F.2d at 664; *Washington,* 756 F.2d at 961; and *Dougherty,* 711 F.2d at 561. In order for the government to meet its burden, it must prove all of the following elements: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounds; *and* (3) a reasonable connection between the facts alleged and the legal theory advanced. *Brinker,* 798 F.2d at 664; *Washington,* 756 F.2d at 961; *Tressler,* 748 F.2d at 149–150; and *Dougherty,* 711 F.2d at 564. The government must make a strong showing on each of the foregoing elements to meet its burden; and the burden "is not met merely because the government adduces 'some evidence' in support of its position." *Washington,* 756 F.2d at 961; *Tressler,* 748 F.2d at 150.

By way of analogy to the EAJA, the Debtor herein is clearly the prevailing party, whereas ITT stands in the shoes of the government, and it must carry the burden of showing substantial justification; otherwise, attorneys fees will be awarded against it. The language "shall award fees" in both the EAJA and 11 U.S.C. § 523(d) provides for the mandatory award of counsel fees to a qualified prevailing

---

**2.** Prior to the enactment of BAFJA, 11 U.S.C. § 523(d) read as follows:

> (d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fees for, the proceeding to determine dischargeability, unless such granting of judgment would be clearly inequitable.

This standard appears more liberal to debtors than the present language, although, unlike the present language, there was obviously no attempt in the pre-BAFJA version of § 523(d) to incorporate the EAJA standards.

**3.** We observe that ITT has cited three (3) cases from two (2) other Circuits as authority for the proposition that the EAJA standard is "whether plaintiff had a reasonable basis, in law *or* fact, to institute proceedings." *Cornella v. Schweiker,* 728 F.2d 978 (8th Cir.1984); *EDF v. Watt,* 722 F.2d 1081 (2d Cir.1983); and *Foley Constr. Co. v. U.S. Army Corps of Engineers,* 716 F.2d 1202 (8th Cir.1983), *cert.˙ denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). Because the law of the Third Circuit is so well-developed in this area, we are not inclined to consider cases from other circuits. However, we note that all of these cases cite Third Circuit cases with approval, and that the two (2) Eighth Circuit cases make clear that the government has the burden of showing that its position was justified "in law *and* in fact." See *Cornella,* 728 F.2d 982; *Foley,* 716 F.2d at 1204.

party under the EAJA, *Tressler*, 748 F.2d at 149, and under § 523(d) in the case *sub judice. See In re Poskanzer*, 55 B.R. 329, 331 (Bankr.D.N.J.1985).

■ ITT cites *In re Fox*, 725 F.2d 661 (11th Cir.1984);[4] *In re Jones*, 49 B.R. 431 (Bankr.D.D.C.1985); *In re Weiss*, 42 B.R. 314 (Bankr.E.D.Pa.1984) (per TWARDOW-SKI, CH. J.); and *In re Archangeli*, 6 B.R. 50 (Bankr.D.Me.1980), for the proposition that attorney's fees under § 523(d) should not be awarded unless the complaint was filed in bad faith or was frivolous. To the extent that the cases cited by ITT apply such a standard, we believe a "bad faith or frivolous" standard is incorrect for the reasons already set forth above. It must be noted that it cannot be determined whether the *Weiss* case applies § 523(d) in its present form or in its form as written prior to BAFJA. In any event, *Weiss* contains no discussion of EAJA, cites to 1978, pre-BAFJA legislative history as its authority, and denies the debtor's request for attorney's fees, utilizing a bad faith/frivolity standard in one brief paragraph. Hence, we are respectfully not inclined to follow that case as a basis for establishing the correct standard for determining whether the Debtor is entitled to an award pursuant to 11 U.S.C. § 523(d).

Although it is clear that the *Jones* case applies § 523(d) as written with the EAJA language of substantial justification, the court applies the pre-BAFJA language and a standard of "clear inequity" and makes no reference to EAJA. Hence, the *Jones* court has applied the incorrect standard in denying fees under § 523(d).[5]

Having set forth the standards under which the language of § 523(d) must be analyzed, we now apply these standards to the facts at hand. As the Court of Appeals teaches in its most recent EAJA opinion, we must proceed as follows in our analysis:

[w]hile the arguments of the parties, and any evidence introduced in the fees actions, such as affidavits, must be carefully considered, it is essentially the relevant portions of the record in the underlying action which must be examined in order to determine if the government has proved substantial justification for its positions [*Dougherty*, 711 F.2d] at 562. *Brinker*, 798 F.2d at 664.

In examining the record, we must first look at whether ITT has demonstrated a reasonable basis in truth for the facts alleged. Regarding its § 523(a)(2)(A) claims, except for the fact that the Debtor consulted with a bankruptcy lawyer within eight (8) days of obtaining the loan in question and filed his bankruptcy petition within eighteen (18) days thereafter, ITT has not shown a reasonable factual basis of "false pretenses, a false representation, or actual fraud" on the part of the Debtor so as to be able to establish a reasonable basis in fact for this conclusion. Similarly, there was no basis to conclude that the Debtor "concealed his chronic illness." The Debtor, by his appearance, was severely overweight, and this alone should have suggested a health problem.

With respect to its § 523(a)(2)(B) claims, not only did ITT fail to produce clear and convincing evidence that the Debtor came within the ambit of this section, but also its proofs were very weak and did not even meet the lesser standard of proof of preponderance of the evidence. The only written evidence constituting a "statement in writing" were the City of Philadelphia pay stubs allegedly given to ITT's agent by the Debtor which did not bear the Debtor's name or any other indicia that they came from the Debtor. The Debtor denied that he gave these pay stubs to ITT's agent, although the agent testified to the contrary. As we indicated in our prior decision, we credit the Debtor, because we find

---

**4.** ITT's citation to *Fox* is completely misplaced, because the *Fox* court held that § 523(d) was inapplicable to commercial transactions such as the one under consideration. Hence, the *Fox* court's discussion of § 523(d) is merely to indi-

cate that the Section was not relevant to the decision. Here, that Section clearly *is* relevant.

**5.** The *Archangeli* case is clearly a pre-BAFJA case and is inapposite to our analysis herein.

it unbelievable that the Debtor would have divulged his employer as a union hiring hall on his loan application, yet tried to produce pay stubs from the City of Philadelphia to verify his income. See 66 B.R. at 988.

■ A case on point is *In re VanBuren*, 66 B.R. 422 (Bankr.S.D.Ohio 1986), in which the court held that, where the creditor's own evidence is not sufficient to sustain a necessary element on which the creditor will bear the burden of proof, the creditor cannot establish that its actions were "substantially justified" in fact so as to disallow attorney's fees under § 523(d). The essence of the creditor's position in *VanBuren* was that the debtor failed to disclose that certain real estate listed on her application for credit was owned by her father. The evidence revealed that the creditor should have known from its own records that the real estate was in her father's name, *i.e.*, two (2) separate notations in the creditor's file listed the real estate in the name of the debtor's father. The debtor testified that she consistently told the creditor that her father owned the real estate. The creditor made no effort to determine ownership of the real estate by any independent means prior to making the loan, even though its own records raised a question of ownership.

The *VanBuren* court stated that, in such a situation, the creditor "cannot produce a portion of its records—those favorable to its position, and ignore another portion of its records—those that contradict its claim, and assert that its position is substantially justified." *Id.* at 425. The court goes on to say:

> If H.F.C. [the creditor] did not deem it necessary to examine its own records or otherwise determine the ownership of the real estate in question in order to grant or deny the loan to the defendant, *a different determination must be made by H.F.C. and its counsel when it considers filing a complaint pursuant to 11 U.S.C. s 523(a)(2). It must consider whether such a filing is substantially justified.* Such a consideration is not whether H.F.C. would prevail on its com-

plaint; but, whether it can produce some evidence on all necessary elements of its claim that, at a minimum, is not contradicted by its own records. H.F.C. had to realize that it could not meet its burden to establish by clear and convincing evidence proof that the defendant made a false statement about real estate ownership.

> This case presents a clear example of facts warranting an award of attorney's fees to the defendant. *Id.* (emphasis added).

We find ourselves in complete agreement with the *VanBuren* court. In the case *sub judice*, ITT did not deem it necessary to examine its own records, *i.e.*, the Debtor's application, which stated the Debtor's employment to be other than indicated by the pay stubs, on which ITT relied in its objection to dischargeability of the debt. Nor did ITT deem it necessary to independently verify the alleged employment discrepancy. As in *VanBuren*, regardless of ITT's internal process by which it approved the loan, we hold that a different determination must be made by a creditor such as ITT when it considers filing a complaint pursuant to 11 U.S.C. § 523(a)(2); a creditor must consider whether such a filing is substantially justified. In other words, a creditor must consider whether it can produce some evidence on all necessary elements of its claim so as to meet the standard established in this Circuit of showing that a reasonable basis of truth exists for the facts alleged. Thus, ITT is unable to meet the requirement of the first of the three-prong test set forth *supra* at page 1001 by the Court of Appeals as necessary by the defending party to defeat an EAJA petition.

■ With respect to ITT's assertion of fraud pursuant to 11 U.S.C. § 523(a)(2)(A), while admittedly a closer case, because of the short period of time within which the Debtor obtained the loan and filed for bankruptcy, *id.* at 989, we hold that this time-factor in and of itself is not sufficient to establish a reasonable factual basis such as to meet the burden of substantial justifi-

cation. The burden of ITT was to prove fraud by "clear and convincing" evidence. Under the EAJA standards, the Third Circuit has established that the government (here, ITT) does not meet its burden by the showing of "some evidence." *Dennis*, 756 F.2d at 976; and *Tressler*, 748 F.2d at 150. ITT offered no other evidence or proof of the Debtor's lack of credibility. The evidence offered, relating to the time-sequence, without more, was, in itself, not "clear and convincing." We recognize the substantial burden which this places on objecting creditors, but we believe that the creditor should consider whether it can meet this burden before instituting a proceeding contesting dischargeability. If it is unable to convince us that it had, in its possession, evidence which it could have reasonably concluded would meet the heavy evidentiary burden, then it lacked "substantial justification" for its action under the first prong of the EAJA standard.

We note that creditors can determine whether evidence to meet the necessary standard exists by examining the debtor at either the § 341 Meeting of Creditors pursuant to Rule of Practice and Procedure in Bankruptcy (hereinafter referred to as "B.Rule") 2003 and or an examination per B.Rule 2004 upon order of the court. The purpose of the § 341 examination is to make a determination, *inter alia*, as to whether there are grounds for objections to discharge or dischargeability of debts. 2 COLLIER, *supra*, ¶ 341.02 at 341–10. H.R.Rep. No. 595, 95th Cong., 1st Sess. 331 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 42 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The scope of examination at a § 341 meeting is quite broad, *see* 2 COLLIER, *supra*, § 343.06, at 343–15 to 343–16, and the scope of a B.Rule 2004 examination is "wide." *Id.*, ¶ 343.04, at 343–5 to 343–10. Creditors should, hence, be able to ascertain, prior to filing a complaint, whether a reasonable basis in truth exists for the facts alleged and whether these facts are sufficient to meet the burden of substantial justification. *See VanBuren, supra.*

ITT's claim under 11 U.S.C. § 523(a)(2)(C) was discussed in our previous Opinion in great detail. See 66 B.R. at 989–991. Therein, we characterized ITT's legal theory as "patently frivolous." *Id.* at 991. Hence, we have determined that there was no reasonable basis in law for ITT's theory that the transaction was under an open end credit plan, and ITT therefore cannot meet the second prong of the burden of proof of "substantial justification" established in the Third Circuit EAJA cases as to its § 523(a)(2)(C) claim.

We turn briefly to ITT's assertion that special circumstances exist which would make an award of fees unjust. ITT asserts no such circumstances except that which was asserted in support of its claim of substantial justification. Courts which have found "special circumstances" to exist, as per the EAJA, have done so on the ground that the party opposing the fee award has asserted a novel legal theory or has established equities on the basis of the prevailing party's unclean hands. *Brinker*, 798 F.2d at 667 (citations omitted). No novel legal theory of any merit was advanced here by ITT, and no proof of unclean hands of the Debtor was established.

In support of the Debtor's Motion for Attorney's Fees, the Debtor submitted the unsworn declaration of his counsel, John F. Gehring, Esquire. This document detailed the hours spent by Mr. Gehring through October 24, 1986, for a total of 16.95 hours, at $85.00 per hour.[6] ITT indicated no opposition to the accuracy or reasonableness of the time expended. Upon review of the application, we find the amount of time expended to be quite reasonable, and the hourly rate sought to be eminently reasonable, given the good quality of service provided, particularly in the briefing. An appropriate Order will be entered allowing

---

**6.** These calculations factor out the $200.00 which the Debtor's Counsel conceded should not be included. See page 1000 n. 1 *supra*.

the full $1,440.75 in attorney's fees sought by the Debtor.

We have previously indicated that, unless extraordinary circumstances exist, we will decline to award attorney's fees for time spent on the preparation of fee applications. *In re Shaffer-Gordon Associates, Inc.*, 68 B.R. 344, 349 (Bankr.E.D.Pa., 1986). However, as we indicated in our later Opinion in *In re Beck-Rumbaugh Associates, Inc.*, 68 B.R. 882, 889 (Bankr.E.D. Pa., 1987), one example of such a special circumstance is where the party seeking compensation is required to proceed at length to fend off opposition to his fee award.

██ Here, the Debtor's counsel was required to attend an additional argument and draft an additional Brief to finally obtain the fees to which he was entitled. This factor, combined with the fact that the award for attorney's fees will be paid by ITT rather than from the proceeds of a debtor's estate, *see In re Bible Deliverance Evangelistic Church*, 39 B.R. 768, 772–775 (Bankr.E.D.Pa.1984) (per KING, J.), causes us to conclude that, here, the Debtor is entitled to compensation for time expended by his counsel on the fee application.

Therefore, we will entertain a supplemental request for attorney's fees for reasonable time expended by the Debtor's counsel in pursuit of his fees since October 24, 1986, as well as awarding the Debtor's counsel $1,440.75. An appropriate Order is attached.

### ORDER

AND NOW, this 19th day of February, 1987, upon consideration of the Motion for Reconsideration filed by Defendant ITT FINANCIAL SERVICES (hereinafter referred to as "ITT") regarding that portion of our Order of October 23, 1986, indicating that the Debtor's counsel was entitled to attorney's fees, the Debtor's Answer thereto, and the Motion of the Debtor's Counsel for Attorneys Fees and Costs Pursuant to 11 U.S.C. Section 523(d), it is hereby

ORDERED and DECREE

1. ITT's Motion for Rec. DENIED.

2. The Motion of the Debtor's Counsel for Attorneys Fees and Costs in the amount of $1,440.75 is GRANTED.

3. ITT is directed to pay the sum of $1,440.75 to the Debtor's Counsel, MICHAEL A. CIBIK & ASSOCIATES, within fifteen (15) days of this Order.

4. The Debtor's counsel is accorded the opportunity to file a supplemental Motion for attorneys' fees incurred since October 24, 1986, in the form required by *In re Meade Land and Development Co., Inc.*, 527 F.2d 280 (3d Cir.1975), within twenty (20) days from the date of this Order.